Cherry v. Comm'r Social Sec.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION SUMMARY ORDER). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of May, two thousand twenty.

PRESENT:
> **BARRINGTON D. PARKER,**
> **SUSAN L. CARNEY,**
> > *Circuit Judges,*
> **LEWIS A. KAPLAN,**
> > *District Judge.\**

————————————————————————

**Lamont C. Cherry,**

> *Plaintiff-Appellant*,

> **v.**          19-1608

**Commissioner of Social Security Administration,**

> *Defendant-Appellee*.

————————————————————————

---

\* Judge Lewis A. Kaplan, of the United States District Court for the Southern District of New York, sitting by designation.

1

**FOR PLAINTIFF-APPELLANT:**  Lamont C. Cherry, pro se, New York, NY.

**FOR DEFENDANT-APPELLEE:**  Allison M. Rover, Benjamin H. Torrance, Assistant U.S. Attorneys, *for* Geoffrey S. Berman, U.S. Attorney, Southern District of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Caproni, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Appellant Lamont C. Cherry, pro se, sought review of a final decision by the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income benefits. A magistrate judge issued a report and recommendation ("R&R") recommending remanding for a new hearing because of technical problems at the administrative hearing and because the administrative law judge's ("ALJ") disability determination was erroneous. The district court declined to adopt the R&R and instead granted the Commissioner's motion for judgment on the pleadings, ruling that substantial evidence supported the ALJ's decision that Cherry was not disabled. The issues on appeal are whether (1) substantial evidence supports the ALJ's determination that Cherry did not have a severe mental impairment, (2) Cherry had the residual functional capacity ("RFC") to perform light work with some limitations despite his physical impairments, (3) he could perform unskilled sedentary jobs, and (4) technical difficulties prevented Cherry from receiving a fair hearing. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal, to which we refer only as needed to explain our decision to affirm the district court's judgment.

2

We review de novo a district court's judgment on the pleadings. *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). When the judgment upholds a benefits determination by the Commissioner, we conduct a de novo review of the administrative record "'to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard.'" *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) (quoting *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002)). This standard means that "once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks omitted) (emphasis in original).

Upon such review, we conclude that substantial evidence supports the ALJ's determination that Cherry had the RFC to perform sedentary and light exertional work with limitations despite his shoulder and ankle conditions, and that jobs he could perform were available in significant numbers in the national economy, and therefore that he was not disabled. Substantial evidence also supports the ALJ's determination that Cherry's bipolar disorder was not a severe mental health condition because it did not significantly limit his ability to function and was adequately controlled with medication. Additionally, the hearing transcript showed that Cherry received a fair and adequate hearing despite the technical difficulties encountered during the hearing. Accordingly, we affirm for substantially the same reasons as those stated by the district court in its March 22, 2019 opinion and order. Several points, however, warrant brief discussion.

On appeal, Cherry challenges the ALJ's determination that he did not have a severe mental health condition, arguing that the ALJ overlooked the severity of his bipolar disorder

3

symptoms, including mood swings, which affected his social relationships and his ability to work. This argument fails. Although Nurse Practitioner Ogula's July 2014 treatment notes stated that Cherry's irritability and aggression had caused him difficulty in interacting with others, she prescribed two mood stabilizers, and her August 2014 treatment notes stated her view that Cherry was much calmer, remained in control of his behavior, and that the new medications were helping. In line with this report, Cherry also testified at the hearing before the ALJ that his medication kept his bipolar disorder under control. The ALJ properly discounted Ogula's July 2014 medical source opinion because she was a nurse practitioner and thus was not an acceptable medical source when Cherry filed his claim. The regulations were amended in 2017 to add advanced practice registered nurses (a category that includes nurse practitioners) to the list of acceptable medical sources, but the amended regulation applies only to claims filed on or after March 27, 2017, almost three years after Cherry filed his claim (he did so on April 29, 2014). 20 C.F.R. § 404.1502(a)(7). The other evidence in the record—the June 2014 consultative psychiatric evaluation by Dr. Toula Georgiou and all of the treatment notes except for NP Ogula's July 2014 notes—supported the determination that Cherry's bipolar disorder caused only mild limitations.

Cherry also argues that the ALJ should have placed more weight on the non-medical factors limiting his ability to work, such as his incarceration and lack of work experience. At step five of the sequential analysis, the ALJ was required to consider both Cherry's RFC and his age, education, and work experience to determine whether he could perform jobs that existed in significant numbers in the national economy. 20 C.F.R. § 416.920(g). The ALJ explicitly took into account Cherry's lack of prior work experience, his age, and his high school education;

4

based on these factors, the vocational expert considered only unskilled jobs. The regulations did not require the ALJ to consider other factors limiting Cherry's employment opportunities, such as Cherry's incarceration history. *Id.*

Cherry argues that he should not be "penalized" for continuing to maintain normal activities of daily living despite his impairments. However, the ALJ properly took into account Cherry's reported activities of daily living, as required by the regulations. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); *see also, e.g., Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (approving ALJ's reliance on claimant's daily activities questionnaire).

The district court cited non-binding case law in support of its ruling that the ALJ's omission of Cherry's limitations on bending and stooping in the hypothetical posed to the vocational expert during the hearing was harmless. It is preferable to point to binding case law, of course. Even so, the cases cited by the district court relied on a sound SSA ruling that "[i]f a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact." S.S.R. 85-15, 1985 WL 56857, at *7 (S.S.A. 1985). This is sufficient. Similarly, although the district court cited non-binding case law on the issue of when an erroneous hypothetical question posed to a vocational expert is harmless error, this Court has held that posing an erroneous hypothetical question is harmless where the hypothetical "otherwise implicitly account[ed] for [the] claimant's limitations[.]" *See McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) (internal quotation marks omitted). The district court was correct that the erroneous hypothetical question did not materially taint the ALJ's decision.

We have considered all of Cherry's remaining arguments and conclude that they are without merit.   Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court